## Case No. 10,312.

### NORTH v. McDONALD.

[1 Biss. 57.] 1

Circuit Court, N. D. Illinois. April Term, 1854.

ATTACHMENT—JURISDICTION—WHAT CONSTITUTES CONCEALMENT—NO ISSUING OF PROCESS NECESSARY.

1. Where the defendant is a citizen of Illinois, and the plaintiff a citizen of another state, and an attachment writ is served upon property, and defendant personally served with process, this court can take cognizance of the case.

2. A man who leaves a place to avoid service of process, requesting false information to be given of his movements "conceals himself so that process cannot be served upon him" within the meaning of the attachment law of Illinois.

3. Circumstances authorizing the issuing of an attachment stated.

4. It is not necessary that process should be first issued, or that an attempt should be made by an officer to find him. It is sufficient if he so conceal himself that an attempt to serve process would be useless.

5. The concealment may be at a distance as truly as where he resides, and if it turn out that he was in another county, it is no objection that process was not issued to that county.

Attachment, with personal service, tried by the court. Upon an affidavit alleging that the defendant concealed himself so that ordinary process could not be served upon him,

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

a writ of attachment was issued on the 11th of March, 1853, and on the 15th served on property of the defendant in DeWitt county, and on the 11th of April personally served on defendant. The defendant was a citizen of this state, a resident of Chicago, and had kept a store here, until immediately prior to the issuing of the writ. He had then transferred his stock to a brother who went into possession. The evidence showed that defendant was largely indebted and embarrassed. The plaintiff was a resident of another state, and his agent came to Chicago about the 5th of March, made inquiry at the store for defendant, and was told by his brother and the clerks that he had gone to Joliet, but would return. He called every day for eight days, and was always told that he would probably be back the next day. On inquiry of other persons he learned that defendant had goods at Bloomington, but on going there he found that defendant had been there and had moved some goods further south. On his return he sued out this writ. Another witness testified that he had, at that time, claims in his hands against defendant to the amount of four or five thousand dollars; was on the lookout for him, and passed his store almost every day; found him in once between February 22d and March 8th, thinks it was about the 7th of March, and requested him to pay one of the claims. Defendant refused, and said that he had disposed of his goods, and declined to state to whom, but said that his brother was the agent of that person, and that inquiry might be made of him. Witness, in the presence of defendant, asked the brother to whom the goods had been transferred, and he declined to state, but said that he might ascertain by going to the records. On examination of the records, witness could find nothing; called again the next day and was told that he would be in soon. On inquiry at the hotel where he boarded, was told that he had gone east. Mr. Maher, to whom, as it afterwards appeared, the goods had been transferred, told witness that defendant had gone to the junction on the Galena road. Witness called at the store every day until March 20th; and sometimes one account and sometimes another was given as to defendant's absence. Another witness who also had claims against defendant, called at the store on the 7th of March, and was told by defendant's brother that he had gone to Rockford and was expected back that night; called repeatedly for several days, and was at one time told by defendant's brother that he had received a letter from him at Sycamore; would not allow witness to see the letter or examine the books; on inquiring of persons living near was told that defendant had gone to Australia. Defendant was an unmarried man, and had no dwelling house. He returned to Chicago on the 21st of March. Defendant's brother called as a witness, admitted the various falsehoods told to different cred-

itors, and stated that in fact his brother had gone to Bloomington to bring to Chicago the goods which they had at that place. He further declared that his brother left publicly and mentioned the circumstances.

H. G. & E. S. Shumway, for plaintiff.
N. B. Judd, for defendant.

DRUMMOND, District Judge. The defendant being a citizen of this state and the plaintiff a citizen of another state, and as the attachment was not only served on property, but the defendant was also personally served with process, in accordance with the rule laid down in Toland v. Sprague, 12 Pet. [37 U. S.] 300, and the act of congress of March 14, 1848 (9 Stat. 213) this court can take cognizance of the case. There is no doubt there must be an intentional concealment to avoid the service of process, and the question is did the intention exist in this case coupled with the actual concealment or avoidance.

The evidence might undoubtedly be more conclusive, but, after a careful examination, I have become convinced that the attachment properly issued. It is to be remarked that in the great majority of these cases, the evidence will consist of various circumstances and incidents, none of which in themselves may be sufficient, but which, when taken altogether, produce the conviction as to the intention. Men, when they seek to avoid the service of process do not publicly announce their purpose, on the contrary, they would be more likely to declare the reverse. We must judge from their acts, and it seems to me clear that these repeated falsehoods were not told by the clerks without the defendant's knowledge and instructions. The defendant was deeply embarrassed; creditors were calling on him daily and pressing their claims. He had transferred his goods. He left town suddenly without informing them where he was gone. His clerks, and particularly his brother, who had charge of his business, misled and attempted to deceive his creditors as to where he was. It appears to me that the facts warrant the belief that he left to avoid the service of process, and that he returned because of the service of attachments upon his property. If he left for that purpose, requesting false information to be given of his movements, he concealed himself, in my opinion, just as truly as though he had hid himself in a cave. Of course I do not refer to cases where a person leaves his home or place of business with the intent to depart from the state, or to remove his property out of the state, but to the case of a person concealing himself within the state which can be done as effectually at a distance as near at home.

It has been objected that a process should in point of fact have been first issued and an attempt made to serve it before the attachment would lie. That part of the statute we are now considering authorizes an attachment to issue in case "such debtor conceals himself, or stands in defiance of an officer. so that process cannot be served upon him." It comprehends two classes of debtors and in contradistinction—the debtor who conceals himself so that process cannot be served upon him, and the debtor who stands in defiance of an officer so that process cannot be served. The objection goes the extent of maintaining that there can be no other evidence of concealment except what follows or is attended with attempted service of process. If this were the meaning it may well be asked why the statute has a double aspect. There may be some reason for saying that the last clause implies that the debtor must defy the officer that has the process, but however that may be, I think in the other case he is not required to conceal himself from an officer who has a writ, but to conceal himself so that the attempt to serve a process would be useless. If the rule were otherwise, a creditor would be obliged to follow a debtor into any county in the state where the latter concealed himself,—that is, he would be required to perform an impossibility—because the concealment implies the creditor does not know where to follow him,—and if it turned out afterwards that the debtor was concealed in a county different from his residence, or that where process was issued, it would always be a fatal objection to an attachment in this class of cases, that process was not issued against the defendant in the county where he was. Because the same argument would ever hold good, viz.,—non constat, but if process had been issued in the county where the debtor was, it might by possibility have been served on him. Morgan v. Avery, 7 Barb. 656; Genin v. Tompkins, 12 Id. 265. Issue and judgment for the plaintiff.

---

NORTH (YALE & GREENLEAF MANUF'G CO. v.). See Case No. 18,123.

NORTH, The CHRISTOPHER. See Case No. 2,707.

NORTHAM, The C. H. See Cases Nos. 2,689 and 2,690.

NORTHAM (PHILADELPHIA & R. R. CO. v.). See Case No. 11,090.